Filed 12/28/21  P. v. Lewis CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. VINCENT E. LEWIS, Defendant and Appellant. | B295998 (Los Angeles County Super. Ct. No. TA117431) |

APPEAL from an order of the Superior Court of Los Angeles County, Ricardo R. Ocampo, Judge.  Reversed.

Robert D. Bacon, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez, Scott A. Taryle and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Vincent E. Lewis of first degree premeditated murder in 2012, and we affirmed the conviction in 2014. (*People v. Lewis* (July 14, 2014, B241236) [nonpub. opn.] (*Lewis I*).)[1] In January 2019, Lewis filed a petition for resentencing under Penal Code[2] section 1170.95 and requested the appointment of counsel. The trial court determined that he was ineligible for relief and denied the petition without appointing counsel or holding a hearing. Lewis appealed and, in January 2020, we affirmed the court's order. (*People v. Lewis* (2020) 43 Cal.App.5th 1128 (*Lewis II*), revd. 11 Cal.5th 952.)

In July 2021, our Supreme Court reversed and held that, under section 1170.95, "petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition." (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis III*).) The court further held that the deprivation of that right is state law error subject to harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*Lewis III*, *supra*, 11 Cal.5th at pp. 957−958, 974.) The court remanded the matter to this court "for an evaluation of prejudice under *Watson*." (*Id.* at p. 975.)

We have received and considered supplemental briefing from the parties and heard argument. For the reasons given below, we reverse the order denying Lewis's petition and remand for further proceedings.

---

[1] We have granted the Attorney General's request to take judicial notice of our 2014 opinion in *Lewis I*, and defendant's request to take judicial notice of the record that was before us in that appeal.

[2] Subsequent statutory references are to the Penal Code.

# FACTUAL AND PROCEDURAL BACKGROUND

## A.    *Lewis I*

We draw our summary of the facts, as the Supreme Court did, from our opinion in *Lewis I*. (See *Lewis III*, *supra*, 11 Cal.5th at p. 958 & fn. 2.) In 2011, Lewis, two former codefendants—Ariana Coronel and Mirian Herrera—and Darsy Noriega were members of the Easy Riders gang. On February 2, 2011, Coronel sent text messages to others indicating that Lewis had called a meeting of Easy Riders members to be held that night and that they were going to "take [Noriega] outta the hood." (*Lewis I*, *supra*, B241236, at p. 2.) One gang member testified that there is a difference between a violation of the gang's rules, for which the member received a physical beating, and being "taken out of the hood," from which the member does not "walk away." (*Id.* at p. 4.)

Amy Aleman attended the Easy Riders meeting that night. Aleman and another gang member believed that Noriega would be disciplined by receiving a beating for violating the gang's rules, but would " 'walk away.' " (*Lewis I*, *supra*, B241236, at pp. 3, 5.) At some point during the meeting, Lewis told Aleman, Noriega, Herrera, and Coronel to come with him to buy beer. They went to a liquor store where Lewis and Coronel bought beer. (*Id.* at p. 3.) Instead of heading back to the meeting, Lewis drove around and parked on a street next to an alley. Aleman, Herrera, and Noriega walked down the alley while Lewis and Coronel remained in the car. Aleman, who was walking in front of Herrera and Noriega, heard gunshots behind her. She turned around and saw Herrera shooting Noriega. Aleman and Herrera ran back to the car and Lewis drove back to the meeting.

3

Herrera then told Aleman, "It had to be done. [Noriega] was in other hoods." (*Ibid.*)

Noriega had been hit by approximately 10 bullets fired from the same semi-automatic handgun. She died as a result. (*Lewis I*, *supra*, B241236, at p. 3.)

A gang expert testified for the prosecution that only a "shot caller" can call a meeting to decide whether a member needs to be disciplined, and the Easy Riders have only one shot caller. (*Lewis I*, *supra*, B241236, at p. 5.) The expert was not asked, and did not volunteer, that shot caller's name. (*Ibid.*)

Lewis, Herrera, and Coronel were tried together. The People prosecuted the case against Lewis on alternative first degree murder theories: direct aiding and abetting; and aiding and abetting under the natural and probable consequences doctrine. (*Lewis I*, *supra*, B241236, at p. 5.) The court instructed the jury on both theories. The prosecutor argued to the jurors that the evidence could support a murder verdict under each theory and that the jurors did not have to agree on the same theory to return a guilty verdict.

The jury convicted Lewis of first degree premeditated murder in a general verdict and made no findings that indicate which murder theory the jurors relied upon. (*Lewis I*, *supra*, B241236, at p. 5.) The jury also found that the crime was committed for the benefit of the Easy Riders gang and that Herrera personally and intentionally discharged a firearm causing death. (*Ibid.*) The court sentenced Lewis to prison for 25 years to life. (*Ibid.*)

In his direct appeal, Lewis asserted that the court erred by instructing the jury that it could find him guilty of premeditated first degree murder based on the natural and probable

consequences doctrine. The argument had merit. While his appeal was pending, our Supreme Court decided *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), which held that " 'an aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable consequences doctrine. Rather, his or her liability for that crime must be based on direct aiding and abetting principles.' " (*Id.* at pp. 158–159.)[3] The trial court thus erred in instructing the jury that it could find Lewis guilty of first degree premeditated murder based on the natural and probable consequences doctrine.

We concluded, however, that the error was harmless beyond a reasonable doubt. (*Lewis I*, *supra*, B241236, at p. 19.) We explained that "[t]he undisputed facts of this case provide strong evidence of guilt. The evidence established that Lewis was the gang's shot-caller, that only the shot-caller could authorize the killing of a gang member, that Lewis called a gang meeting that Noriega was required to attend, that he made up the story about needing to buy beer and that he drove Herrera, armed with a gun, to a dark alley where she shot Noriega." (*Ibid.*) Such evidence, together with Coronel's inculpatory texts messages, "constitute strong evidence that [Lewis and the other] defendants invited Noriega to go with them for a car ride and agreed to kill her." (*Ibid.*) We rejected Lewis's other challenges and affirmed the judgment. (*Id.* at pp. 6-20.)

---

[3] *Chiu*'s rationale was extended in *People v. Rivera* (2015) 234 Cal.App.4th 1350 to preclude liability for first degree premeditated murder based on a conspiracy theory. (*Id.* at pp. 1356–1357.)

## B.    Senate Bill No. 1437 and *Lewis II*

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 4, pp. 6675–6677 (Senate Bill No. 1437), which, among other changes, amended section 188 to eliminate liability for murder under the natural and probable consequences doctrine.  (*People v. Gentile* (2020) 10 Cal.5th 830, 847–848 (*Gentile*).)  The legislation also added section 1170.95, which "lays out a process for a person convicted of felony murder or murder under a natural and probable consequences theory to seek vacatur of his or her conviction and resentencing.  First, the person must file a petition with the trial court that sentenced the petitioner declaring, among other things, that the petitioner 'could not be convicted of first or second degree murder because of changes to Section 188 or 189.' [Citations.]  Then, the trial court must 'review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of th[e] section.' [Citation.]  If so, the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and to resentence the petitioner on any remaining counts. [Citation.]  At the hearing, the prosecution must 'prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' [Citation.]  'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.'" (*Gentile, supra*, 10 Cal.5th at p. 853.)

In January 2019, Lewis filed a petition in the superior court for resentencing under section 1170.95.  In accordance with the statute, Lewis alleged that he had been "convicted of [first or second] degree murder pursuant to . . . the natural and probable

6

consequences doctrine." Lewis further alleged that, as a result of changes made by Senate Bill No. 1437, he "could not now be convicted" because he "was not the actual killer" and "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree." He also requested that the court appoint counsel for him.

In February 2019, the trial court denied Lewis's petition without appointing counsel for him or holding a hearing. The court concluded that Lewis was not eligible for resentencing because, based on our opinion in *Lewis I*, he "would still be found guilty with a valid theory of first degree murder."

Lewis appealed and we affirmed in *Lewis II*. In addressing his argument that he was deprived of his right to counsel, we construed section 1170.95 as requiring the appointment of counsel only "after the court determines that the petitioner has made a prima facie showing that petitioner 'falls within the provisions' of the statute." (*Lewis II*, *supra*, 43 Cal.App.5th at p. 1140.) We further explained that the court, in determining whether a petitioner has made such a prima facie showing, may consider the petitioner's record of conviction, including a reviewing court's opinion in the petitioner's direct appeal. (*Id.* at pp. 1137−1138.) We then considered the impact of our conclusion in *Lewis I* that the trial court's instructional error was harmless beyond a reasonable doubt. That conclusion, we explained, meant that "the record established that the jury found [Lewis] guilty beyond a reasonable doubt on the theory that he directly aided and abetted the perpetrator of the murder." (*Id.* at p. 1138.) That theory remains a viable theory of first degree murder even after the changes made by Senate Bill No. 1437.

7

(*People v. Gentile, supra*, 10 Cal.5th at p. 848; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1164.) We therefore concluded that our holding in *Lewis I* "directly refutes [Lewis's] conclusory and unsupported statement in his petition that he did not directly aid and abet the killer, and therefore justifies the summary denial of his petition." (*Lewis II, supra*, 43 Cal.App.5th at p. 1139.)

Lastly, we rejected Lewis's argument that he should not be denied a resentencing hearing because the parties at that hearing may " 'offer new or additional evidence,' as well as rely on the record of conviction," because he "did not include or refer to such evidence in his petition." (*Lewis II, supra*, 43 Cal.App.5th at p. 1139.)

### C.   *Lewis III*

The Supreme Court granted review of *Lewis II* and, in *Lewis III*, held that a petitioner who files "a facially sufficient petition" is entitled upon request to appointed counsel. (*Lewis III, supra*, 11 Cal.5th at p. 957.) The court further held that, "only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Ibid.;* see *id.* at p. 972 ["the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief"].)

The court's prima facie inquiry, *Lewis III* explained, "is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual

8

allegations were proved.  If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis III*, *supra*, 11 Cal.5th at p. 971.)

Regarding the trial court's use of the record of conviction in determining whether the petitioner has made a prima facie showing that he or she is entitled to relief, the Supreme Court stated that "the court may consider documents in the record of conviction if they are relevant to the underlying substantive question." (*Lewis III*, *supra*, 11 Cal.5th at p. 972, fn. 6.)  The record of conviction, the court explained, "will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at p. 971.)

"Appellate opinions, like *Lewis I*," the court continued, "are generally considered to be part of the record of conviction. [Citation.]  However, . . . the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' " [Citation.]  In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] As the People emphasize, the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis III*, *supra*, 11 Cal.5th at p. 972.)

9

The *Lewis III* court then turned to the question whether the trial court's error in denying Lewis counsel was prejudicial. The court rejected Lewis's argument that the error was structural and required automatic reversal. (*Lewis III, supra,* 11 Cal.5th at p. 972.) The error, the court explained, "was state law error only" and must be evaluated for prejudice under "the *Watson* harmless error test." (*Id.* at p. 973.) Under this test in this context, "Lewis must therefore 'demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.' [Citations.] More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." ' " (*Id.* at p. 974.)

Lewis argued to the Supreme Court that the error was prejudicial because " '[c]ounsel could have assisted [him] in making a prima facie factual case that his conviction for murder rests on now-forbidden natural and probable consequences reasoning.' " (*Lewis III, supra,* 11 Cal.5th at p. 975.) The court, however, declined to decide this issue; instead, it remanded the case to this court "for an evaluation of prejudice under *Watson* in the first instance." (*Ibid.*)

## DISCUSSION

The Supreme Court has directed this court to determine whether, under the *Watson* standard of prejudice, Lewis has met his " 'burden of showing "it is reasonably probable that if [he . . .] had been afforded assistance of counsel his . . . petition would not have been summarily denied without an evidentiary hearing." ' "

10

(*Lewis III*, *supra*, 11 Cal.5th at p. 974.)  For the reasons that follow, we conclude that Lewis has met this burden.

Here, there is no dispute that Lewis's petition is "facially sufficient" (*Lewis*, *supra*, 11 Cal.5th at p. 957) and that he has alleged facts which, if true, establish the requisite prima facie showing and entitle him to a hearing pursuant to section 1170.95, subdivision (d)(3).  He may nevertheless be denied that hearing if " 'the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition." ' " (*Lewis III*, *supra*, 11 Cal.5th at p. 971.)  The only document in our record the Attorney General relies upon to refute Lewis's allegations is our decision in *Lewis I*.

The Attorney General's reliance on *Lewis I* is understandable given our statements in *Lewis II* that the holding of *Lewis I* that the trial court's instructional error was harmless established, in effect, "that the jury found [Lewis] guilty beyond a reasonable doubt on the theory that he directly aided and abetted the perpetrator of the murder." (*Lewis II*, *supra*, 43 Cal.App.5th at pp. 1138–1139.)  This holding, we explained, "directly refutes [Lewis's] conclusory and unsupported statement in his petition that he did not directly aid and abet the killer, and therefore justifies the summary denial of his petition based on the authorities and policy discussed above." (*Id.* at p. 1139.)

If counsel had been appointed for Lewis when he filed his section 1170.95 petition, counsel could have made the argument his counsel now makes to this court that the holding in *Lewis I* should not have the preclusive effect we had given it in *Lewis II*. That argument, we conclude, has merit.

As Lewis argues, issue preclusion requires, among other elements, that "the issue to be precluded must be identical

11

to that decided in the prior proceeding." (*People v. Garcia* (2006) 39 Cal.4th 1070, 1077.) The relevant issue in Lewis's 1170.95 petition is whether, as Lewis has alleged, he could not currently be convicted of murder because of the changes made to the definition of murder in Senate Bill No. 1437. (§ 1107.95, subd. (a)(3).) Although the precise meaning of this requirement is unsettled (see *Lewis III*, *supra*, 11 Cal.5th at p. 972, fn. 6 [declining "to resolve what is substantively required under [section 1170.95,] subdivision (a)(3)]), it can be restated roughly for our purposes as an assertion that Lewis was not the actual killer, did not act with the intent to kill, and was not a major participant in an underlying felony who acted with reckless indifference to human life. (See Stats. 2018, ch. 1015, § 1, subd. (f).) This factual assertion can be refuted—and a prima facie showing rejected—by, for example, evidence in the record of conviction that the petitioner had admitted, as part of a guilty plea, that he was the actual killer, or a jury's finding that the petitioner "personally and intentionally discharged a firearm causing great bodily injury or death in a single victim homicide within the meaning of section 12022.53, subdivision (d)." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 330, disapproved on another point in *Lewis III*, *supra*, 11 Cal.5th at pp. 961−962; see *People v. Secrease* (2021) 63 Cal.App.5th 231, 247, review granted June 30, 2021, S268862 ["section 1170.95 does not allow relitigation of factual questions that were settled by a prior jury"].)

Here, there was no analogous issue-precluding admission or jury finding in *Lewis I*. The issue decided in *Lewis I* was whether the error in instructing the jury as to the natural and probable consequences was harmless beyond a reasonable

doubt.  The error was harmless, we held, not because of a jury determination that necessarily established, for example, that Lewis acted with the intent to kill; rather, we based our conclusion on our evaluation of the "strong evidence of guilt," which convinced us beyond a reasonable doubt that giving an instruction on natural and probable consequences did not affect the verdict.  (*Lewis I*, *supra*, B241236, at p. 19.)  Notwithstanding the contrary view we expressed in *Lewis II*, that determination is not the same as an actual jury finding that Lewis acted with the intent required under the current definition of murder.

Because, as we now view our holding in *Lewis I*, the harmless error issue we decided in that case is not identical to the central issue posed by Lewis's petition, our prior holding does not refute Lewis's allegation that he could not be convicted of murder under current law.  We therefore conclude that the error in failing to appoint counsel in this case was not harmless and that the trial court must appoint counsel for Lewis.[4]

---

[4] By the time our remittitur issues after January 1, 2022, changes made to section 1170.95 by Senate Bill No. 775 (2021-2022 Reg. Sess.) will be in effect.  Further proceedings in this case shall take place in accordance with the law as amended.

**DISPOSITION**

The court's February 4, 2019 order denying Lewis's petition for resentencing is reversed. After remand, the court shall appoint counsel for Lewis and conduct further proceedings in accordance with Penal Code section 1170.95, subdivision (c), as amended by Senate Bill No. 775 (2021–2022 Reg. Sess.).

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


BENDIX, J.

14